615 A.2d 271

A.C. CONSTRUCTION CO., INC., PLAINTIFF–APPELLANT,
v. INEKE KEHOE, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 23, 1992—Decided October 28, 1992.

Before Judges KING, BRODY and THOMAS.

*Ronald J. Cappuccio* argued the cause for appellant.

*George M. Shumsky* argued the cause for respondent (*Capehart & Scatchard,* attorneys; *Mr. Shumsky* and *William B. Scatchard, Jr.,* on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

Plaintiff appeals, on leave granted, from an interlocutory order that (1) invalidated its contractor's lien based upon a filed construction contract and (2) extinguished "all derivative stop notices." [1] Plaintiff is a building contractor; defendant is the owner of real property on which plaintiff constructed a substantial part of defendant's new home. The underlying dispute is

---

[1] Defendant tells us in her brief that the order has the effect of extinguishing the stop notices of two suppliers who are not parties. One stop notice is in the amount of $39,188.01 and the other is in the amount of $12,675. Although the point was not raised below, the interest of these suppliers in the loss of their stop notices renders them necessary parties. *R.* 4:28–1(a).

over the amount, if any, due under the contract and the amount, if any, due for modifications and extras.

No evidence was submitted on defendant's motion, there was no oral argument and the trial judge neither made findings nor gave reasons for granting the motion. We are left to surmise the facts from allegations in the pleadings, and to infer the judge's reasoning from arguments in the memoranda submitted to him on the motion.

Plaintiff agreed by written contract to build the home for $717,511. It alleges in its complaint that defendant also authorized, we assume orally, "changes, deletions, and additions," construction of a barn on the property, and "preparation of the site." The sum due for these modifications and extras allegedly totals $219,536, the amount plaintiff seeks to recover in this action. Defendant had paid plaintiff $660,000 before suit. We are unable to determine from the record which items in the written contract were allegedly modified orally.

The contract, dated May 21, 1990, was filed in the county clerk's office on May 30, 1990. Plaintiff performed some work on the property, how much cannot be determined from the record, prior to the filing date. Relying on the filed contract, two suppliers filed stop notices rather than mechanics' notices of intention. The trial judge appears to have accepted defendant's argument that the written contract did not constitute a lien on the real estate—and the stop notices therefore are of no effect—simply because plaintiff began work on the job before the contract was filed. We disagree.

Those who furnish labor or supply materials to a construction site may secure payment by acquiring a lien on the real estate pursuant to the Mechanics' Lien Law. *N.J.S.A.* 2A:44–64 to –124. With one exception, the mechanics' lien is routinely available to those who file in the county clerk's office a mechanic's notice of intention (MNI) to assert the lien for labor to be furnished or materials to be supplied. *N.J.S.A.* 2A:44–71. The exception, limited in scope, applies only to labor

furnished or materials supplied pursuant to a written construction contract after the contract has been filed in the county clerk's office. Once the contract has been filed, only the contractor named in the contract may acquire a lien for later supplied labor or materials. Except as noted below, others who thereafter furnish labor or supply materials pursuant to the filed contract may not acquire a lien against the realty for such labor or materials but, by filing a stop notice with the county clerk and serving a copy on the owner, may look to the owner for payment out of funds due the contractor under the contract. *N.J.S.A.* 2A:44–75 to –77.

██ Defendant contends that under *N.J.S.A.* 2A:44–75 the exclusive contractor's lien does not come into effect unless the contract is filed before anyone performs any labor or furnishes any materials pursuant to the contract. The statute provides in relevant part:

> If a building is erected ... under a written contract, ... the building and the land on which it stands shall ... be liable to the lien of the contractor alone for labor performed or materials furnished pursuant to the contract, if the contract ..., before the labor is performed or materials furnished, [is] filed with the proper county clerk....[2]

The statute creates the exclusive contractor's lien only as to labor performed or materials furnished after the contract is filed. Where some of the labor has been performed or some of the materials have been furnished before the contract is filed

---

[2] *N.J.S.A.* 2A:44–75 provides in full:

> If a building is erected, constructed, completed, altered, repaired, or added to in whole or in part under a written contract, signed by the record owner of the estate or interest in the land which is to be charged with a lien under this article, the building and the land on which it stands shall, to the extent of the estate or interest so charged, be liable to the lien of the contractor alone for labor performed or materials furnished pursuant to the contract, if the contract or a duplicate thereof, together with the specifications accompanying the contract or a copy or copies thereof, are, before the labor is performed or materials furnished, filed with the proper county clerk. The plans for the building need not be filed, whether or not referred to in the contract. The filing of such contract shall be in lieu of filing a mechanic's notice of intention under this article.

and some after, the contractor's lien attaches only with respect to labor performed and materials furnished after the contract is filed. Until then, the laborer or supplier can be protected by filing a mechanic's notice of intention.

If turning over a spade of dirt before the contract is filed invalidates the contractor's lien that would ordinarily be created when the contract is filed, no one could rely on the contractor's lien without first conducting an investigation as to when labor or materials were first supplied under the contract. Laborers and suppliers would act at their peril by relying on a contractor's lien based on what appears to be a duly filed construction contract.

On the other hand, laborers and suppliers would also act at their peril if they rely on the MNI procedure to secure a lien only to learn when it came time to be paid that while they were supplying labor or materials a construction contract had been filed rendering their MNI ineffective for labor or materials supplied thereafter. Under such a system "mechanics and materialmen [would be] required to ascertain, before each day's work was commenced, or each load of material was delivered, whether a contract had yet been filed...." *La Foucherie v. Knutzen,* 58 *N.J.L.* 234, 237, 33 *A.* 203 (Sup.Ct.1895). To enable suppliers to learn once and for all whether to rely on the MNI procedure or the stop-notice procedure, the court interpreted an earlier version of the Mechanics' Lien Law to mean that the contractor's lien does not arise unless the contract is filed "before the time when such building is begun...." *Id.* at 238, 33 *A.* 203. The trial judge presumably relied on that holding when he entered the present order invalidating plaintiff's lien because here the contract was filed after some work pursuant to the contract had begun.

*La Foucherie* has been superseded by statute. The effectiveness of the MNI procedure no longer requires repeated examinations of the county clerk's records. *N.J.S.A.* 2A:44–76, enacted after *La Foucherie,* expressly deals with the situation

where, after filing a mechanic's notice of intention, someone performs labor or furnishes materials both before and after a contract is filed. A claim for such labor performed or materials furnished before the contract is filed is given a priority lien by the MNI. Moreover, the MNI priority lien covers further labor and materials supplied after the contract has been filed until the laborer or supplier receives personal notice or notice by registered mail that a contract has been filed. Until receipt of such notice the laborer or supplier may rely on the MNI. After receipt of such notice the laborer or supplier knows that payment for further labor or materials is secured only by the stop-notice procedure.[3]

---

[3] *N.J.S.A.* 2A:44-76 provides in full:

Whenever a mechanic's notice of intention shall have been filed by any one other than the contractor prior to the filing of the contract or a duplicate thereof, together with the specifications accompanying the contract or a copy or copies thereof, with the proper county clerk, the building and the land on which it stands shall, to the extent of the estate or interest charged, be first liable to the lien or liens resulting from such notice or notices of intention as shall have had such prior filing notwithstanding any labor was performed or materials were furnished, by the one for whose benefit the notice of intention was filed, subsequent to the filing of the aforesaid contract. The record owner of the estate or interest in the land which is to be charged with a lien under this article, whenever he shall pay anyone for whose benefit such notice or notices of intention were filed any claim or claims for labor required to be performed or materials required to be furnished by the contractor by reason of the aforesaid contract, shall be entitled to an allowance therefor in the settlement of his accounts with the contractor, or his representatives or assigns, as so much paid on account. Nevertheless, whenever written notice shall be given by the record owner of the estate or interest in the land which is to be charged with the lien under this article, or by the contractor or other person, to the ones for whose benefit such notice or notices of intention were filed prior to the filing of the contract, of the time and place of the filing of the contract or a duplicate thereof, together with the specifications accompanying the contract or a copy or copies thereof, subsequent to the filing of such notice or notices of intention, which notice may be served either personally on the one named in the filed notice of intention as the one for whose benefit the notice of intention is filed or by registered mail addressed to the name or address of the one for whose benefit the notice of intention is filed, the building and the land on which it stands shall

In a reply letter memorandum submitted below, defendant argued that the filed contract cannot support the contractor's exclusive lien because the labor and materials for which plaintiff claims payment is due were not furnished pursuant to the filed contract, but pursuant to modifications of the contract and orders for extras. Plaintiff did not respond to the argument below or in its appellate brief, and we do not know if the point formed a basis for the trial judge's order.

We will not pass on the issue in view of the inadequate factual record before us. The trial judge should explore the argument not only with respect to the effectiveness of plaintiff's alleged lien for its own claims but also with respect to the claims of the subcontractors who have filed stop notices.

Reversed and remanded for further proceedings.

---

thereafter, to the extent of the estate or interest so charged, be liable to the lien of the contractor alone, as hereinabove provided, for labor performed or materials furnished pursuant to the contract.